UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENSCO OFFSHORE LLC | CIVIL ACTION |
| VERSUS | NO. 24-371 |
| CANTIUM, LLC | SECTION M (4) |

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by plaintiff Ensco Offshore LLC ("Ensco").[1] Defendant Cantium, LLC ("Cantium") responds in opposition,[2] and Ensco replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

### I. BACKGROUND

This case involves competing contractual claims. Ensco, a drilling contractor, entered into a master services contract ("MSC") with Cantium, an operator of offshore oil-and-gas platforms.[4] The parties subsequently entered into one or more service orders to complete certain drilling activities on one of Ensco's rigs.[5] Ensco filed suit against Cantium, alleging that Cantium is liable for certain unpaid and overdue invoices pursuant to the MSC and service order, and asserting claims for breach of contract, quantum meruit, and promissory estoppel.[6] Cantium then filed a counterclaim against Ensco, alleging that Ensco is liable for breaching the MSC by failing to provide adequate equipment, failing to deliver and maintain Ensco's rig in working order, failing

---

[1] R. Doc. 37.
[2] R. Doc. 42.
[3] R. Doc. 48.
[4] *See* R. Docs. 1 at 2-3; 14 at 13.
[5] R. Docs. 1 at 3; 14 at 13-14.
[6] R. Doc. 1 at 4-6.

to provide qualified personnel, failing to provide competent management and proper financial support, and failing to perform drilling operations in a workmanlike manner.[7] Cantium alleges that Ensco's failures resulted in the loss of one of its wells – namely, the Kings Hill well.[8] Cantium seeks over $22.8 million for the loss of the well, including "spread costs and costs incurred as a result of non-productive time," and over $4.5 million in damages incurred as a result of Ensco's other alleged breaches and acts of gross negligence.[9]

## II.     PENDING MOTION

Ensco argues that Cantium is not entitled to the damages it seeks. According to Ensco, under section 15.21 of the MSC, "the parties waived and released *all* claims for consequential losses, specifically including 'spread costs.'"[10] Ensco further argues that under section 15.6, Cantium released Ensco for all damages to or loss of any wells and that Cantium's "sole and exclusive remedy" for a lost well is to require Ensco to redrill the well to its prior depth at the negotiated redrill rate,[11] but only if the loss was due to Ensco's gross negligence or willful misconduct.[12] And regardless of whether it was grossly negligent, says Ensco, Cantium is not seeking to require Ensco to redrill the well at the redrill rate but to require Ensco to pay for all the costs incurred over the 70-day period in which Ensco redrilled the well.[13] Ensco last contends that despite Cantium's argument that section 15.16 (which limits Cantium's obligation to indemnify Ensco for losses resulting from Ensco's own gross negligence or willful misconduct) also limits

---

[7] R. Doc. 14 at 22-25.
[8] *Id.* at 20-21.
[9] R. Doc. 37-1 at 243-46.
[10] *Id.* at 7 (emphasis in original).
[11] The "redrill rate" is 15% less than the standard operating rate agreed to by the parties. *See id.* at 14.
[12] *Id.* at 14-15 (citing R. Doc. 37-1 at 62, 75).
[13] *Id.*

2

section 15.21's waiver of consequential damages and section 15.6's release of claims for lost wells, those sections are "separate and unrelated."[14]

In opposition, Cantium first argues that the motion is premature because it has not yet had the opportunity to conduct meaningful discovery on its claims.[15] Cantium next argues that the gross negligence exception set forth in section 15.16 applies to the rest of the provisions in section 15, including section 15.21, such that Cantium is allowed to recover consequential damages resulting from Ensco's gross negligence or willful misconduct.[16] Alternatively, says Cantium, because section 15.21 does not expressly include a waiver of consequential damages resulting from gross negligence, the MSC is ambiguous as to whether section 15.16's gross negligence exception applies to the waiver of consequential damages in section 15.21, thus precluding summary judgment at this stage.[17] Lastly, Cantium states that "[n]o reasonable interpretation of the [MSC] results in Cantium agreeing to release Ensco from any damages incurred as a result of Ensco's gross negligence, much less damages associated with the loss of a well," and that "Section 15.16's reference to Section 9.1(F) as Cantium's 'sole and exclusive Remedy' relates only to the negotiated redrill rate for the actual redrill of the lost well," and not additional costs associated with losing the well.[18]

In reply, Ensco reiterates that section 15.16's gross negligence exception to the parties' indemnification obligations is "separate and apart from" and "has no bearing on" section 15.21's waiver of consequential damages.[19] Ensco also contends that the MSC is not ambiguous but instead plainly provides that the parties waive all claims for consequential damages.[20] And, says

---

[14] *Id.* at 15-16.
[15] R. Doc. 42 at 7.
[16] *Id.* at 5, 8-9.
[17] *Id.* at 9-11.
[18] *Id.* at 11-12.
[19] R. Doc. 48 at 2-4.
[20] *Id.*

3

Ensco, since the MSC is not ambiguous, the Court may not look beyond the four corners of the contract, so further discovery will not aid in this matter.[21] Lastly, Ensco reiterates that Cantium's "sole and exclusive remedy" for a lost well is to have the well redrilled to its previous depth at the redrill rate.[22]

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a

---

[21] *Id.* at 8.
[22] *Id.* at 9-10.

whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37

5

F.3d at 1075-76.

B. Analysis

The interpretation of a maritime contract is a question of law. *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019). The contract "'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'" *Paragon Asset Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, 99 F.4th 736, 746 (5th Cir. 2024) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)). "A contract is unambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'" *Channette v. Neches Gulf Marine, Inc.*, 440 F. App'x 258, 260 (5th Cir. 2011) (quoting *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004)). Thus, "[d]isagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (quotation omitted).

**1. Cantium is not entitled to spread costs or other consequential damages.**

Section 15 of the MSC establishes the parties' rights to certain "claims, liabilities and indemnities."[23] The parties generally agree that, under section 15.21(A)(5), they have waived their right to claim consequential losses, including spread costs.[24] That section states:

> 15.21 LIMITATION ON CLASSES OF DAMAGES. OPERATOR [Cantium] AND CONTRACTOR [Ensco] MUTUALLY WAIVE AND RELEASE, ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE GROUP, ALL OF THE FOLLOWING CLAIMS FOR DAMAGES ARISING OUT OF THIS CONTRACT, WHETHER SUCH CLAIMS ARE MADE IN CONNECTION WITH AN INDEMNITY SPECIFIED IN THIS SECTION 15, A BREACH OF ANY OBLIGATION UNDER THIS CONTRACT OR ANY OTHER CLAIM:

---

[23] R. Doc. 37-1 at 73.
[24] R. Doc. 42-1 at 2.

6

    (A) CONSEQUENTIAL LOSS UNDER APPLICABLE LAW (WHETHER DIRECT OR INDIRECT) AND ALL OF THE FOLLOWING (WHETHER OR NOT CONSIDERED CONSEQUENTIAL LOSS UNDER APPLICABLE LAW):

        (1) LOST PROFITS.

        (2) LOSS OF PRODUCTION, INCLUDING PRODUCTION OF PETROLEUM OR PETROLEUM PRODUCTS.

        (3) LOSS OF PROSPECTIVE ECONOMIC ADVANTAGE OR BENEFIT.

        (4) LOSS OF BUSINESS OPPORTUNITY.

        (5) COSTS OF PERSONS HIRED BY EITHER PARTY TO PROVIDE VESSELS, MATERIALS, AND SERVICES OR WORK IN SUPPORT OF THE SERVICES, INCLUDING THOSE COSTS THAT ARE SOMETIMES REFERRED TO AS "SPREAD COSTS", BUT NOT INCLUDING INCREMENTAL COSTS INCURRED BY OPERATOR FOR THE BENEFIT OF CONTRACTOR AND AT CONTRACTOR'S REQUEST, SUCH AS FUEL OR OTHER LOGISTICAL SUPPORT THAT OPERATOR IS NOT EXPLICITLY REQUIRED TO PROVIDE UNDER THIS CONTRACT.[25]

Cantium argues, however, that this waiver is limited by the gross negligence exception set out in section 15.16. Stated differently, Cantium's position is that section 15.16 applies to, and limits the scope of, section 15.21, excepting from that section's waiver claims for consequential loss resulting from the other party's gross negligence or willful misconduct. Section 15.16 states:

    15.16 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, OPERATOR SHALL HAVE NO OBLIGATION UNDER THIS AGREEMENT TO DEFEND, PROTECT, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FOR ANY LOSSES AS A RESULT OF ANY MEMBER OF CONTRACTOR GROUP SENIOR SUPERVISORY PERSONNEL'S GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT ARISING OUT OF THE PERFORMANCE OR NON-PERFORMANCE OF ANY OBLIGATION AND/OR OF SERVICES UNDER THIS CONTRACT OR ANY SERVICE ORDER. THE TERM "SENIOR SUPERVISORY PERSONNEL" SHALL MEAN, FOR THE CONTRACTOR, THE OFFSHORE INSTALLATION

---

[25] R. Doc. 37-1 at 78-79.

MANAGER, THE VICE PRESIDENT OF THE APPLICABLE BUSINESS UNIT AND/OR ANY INDIVIDUAL HIGHER IN THE CHAIN OF THE CONTRACTOR'S FORMAL ORGANIZATIONAL STRUCTURE, INCLUDING THE INDIVIDUALS TO WHOM SUCH REPRESENTATIVES FORMALLY REPORT.[26]

No reasonable interpretation of the MSC results in applying the gross negligence exception from section 15.16 to limit the parties' waiver of consequential damages in section 15.21. While both fall within section 15, section 15.16 addresses the parties' indemnification obligations and section 15.21 addresses limitations on certain damages. Section 15.21 does not explicitly or implicitly incorporate the gross negligence exception found in section 15.16, and the Court cannot construe (or, really, rewrite) the language of the contract to do so. Instead, a plain reading of the contract shows that the parties have mutually waived *all* consequential damages, including spread costs, for breach-of-contract claims.[27]

In addition, the fact that section 15.16 carves out from the parties' indemnity obligations losses resulting from gross negligence, while no such carve-out is provided in section 15.21, does not make the MSC ambiguous in this case. Rather, the Court interprets the lack of a carve-out in section 15.21 to mean that the parties intended to waive all consequential damages, including those resulting from gross negligence, for breach-of-contract claims. Unlike with indemnity provisions, the parties were not required by law to expressly state that section 15.21's waiver in breach-of-contract cases also applied to claims for gross negligence.[28] *See Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002) ("The express negligence rule is a

---

[26] *Id.* at 77-78.

[27] To be sure, the MSC expressly provides in section 15.21 that the waiver of certain damages (including consequential losses) applies to "a breach of any obligation under this contract" separately and independently from, and in addition to, "claims … made in connection with an indemnity specified in this section 15." *Id.* at 78. Cantium's argument that section 15.16's exception should be read to limit section 15.21's waiver might have more force if Cantium's counterclaim amounted to a claim for indemnity. But, as a breach-of-contract claim plain and simple, it does not.

[28] The express negligence rule is a Texas rule. Here, the MSC provides that general maritime law shall govern, and, to the extent such law is not applicable, Texas law shall govern. *Id.* at 8, 88; R. Doc. 42 at 8.

8

rule of contract interpretation that applies *specifically* to agreements to indemnify another party for the consequences of that party's own negligence. Under the express negligence rule, contracting parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document." (emphasis added)).

Since the MSC is not ambiguous, the Court "may not look beyond the written language of the document to determine the intent of the parties." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981). Additional time to complete further discovery is therefore not necessary.

**2. Cantium is not entitled to damages resulting from the lost well.**

Ensco contends that, under sections 15.6 and 9.1 of the MSC, Cantium released Ensco from any claim for damages to, or loss of, any wells. Section 15.6 provides:

> 15.6 DAMAGE TO HOLE, STRATA, FORMATION OR RESERVOIR. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONTRACT INCLUDING SECTIONS 15.2 AND 15.4, IF DAMAGE TO, LOSS OF, OR IMPAIRMENT OF ANY PROPERTY RIGHT IN OR TO THE WELL, HOLE, STRATA, FORMATION OR RESERVOIR, ON WHICH THE SERVICES ARE BEING PERFORMED, OPERATOR (A) RELEASES CONTRACTOR GROUP FROM CLAIMS BY OPERATOR FOR THAT DAMAGE OR LOSS, AND (B) INDEMNIFIES CONTRACTOR GROUP AGAINST THAT DAMAGE OR LOSS AND AGAINST CLAIMS AGAINST ANY MEMBER OF CONTRACTOR GROUP BY ANY MEMBER OF OPERATOR GROUP FOR THAT DAMAGE OR LOSS. THIS SECTION 15.5 DOES NOT, HOWEVER, RELIEVE CONTRACTOR FROM ITS OBLIGATION TO REDRILL A WELL AT THE REDRILL RATE AS PROVIDED IN SECTION 9.1(F) WHEN SUCH RATE IS APPLICABLE, WHICH SHALL BE OPERATOR'S SOLE AND EXCLUSIVE REMEDY.[29]

And section 9.1(F) states:

> The Redrill Rate specified in Appendix A will be payable during any period when operations are being conducted hereunder to redrill the hole drilled hereunder which

---
[29] R. Doc. 37-1 at 75.

9

is lost as a result of Contractor's Gross Negligence or Willful Misconduct and such Rate shall apply to the depth at which the loss occurred.[30]

Read together, these provisions state that when a well is lost or damaged, Cantium's "sole and exclusive remedy" is to have Ensco redrill the well to its prior depth, at the redrill rate, but only if the well was lost because of Ensco's gross negligence or willful misconduct. Here, Ensco has already redrilled the well to its prior depth, and the parties do not appear to dispute the redrill,[31] so the Court need not determine whether the lost well resulted from Ensco's gross negligence. Instead, notwithstanding the language of section 15.6, Cantium argues that it is entitled to damages (including spread costs) for the period in which Ensco redrilled the well.[32] As with section 15.21, Cantium contends that the gross negligence exception in section 15.16 applies to and limits the parties' release of claims in section 15.6. Again, nothing in section 15.6 or 15.16 contemplates such a limitation, and the Court will not read non-existent terms into the contract.

Cantium also argues that the phrase "sole and exclusive remedy" in section 15.6 is used not to state that Cantium's only remedy is to require Ensco to redrill the well, but to state that Cantium may not require Ensco to redrill the well at a rate lower than the redrill rate. Cantium's interpretation is not supported by a plain reading of the contract. By using the phrase "sole and exclusive remedy," the parties agreed that redrilling the well would be the only remedy available to Cantium in the event a well were damaged or lost. *See, e.g.*, *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 512 (N.D. Tex. 2019) ("The use of the term 'exclusive' in the clause expresses the parties' intent to make either repair of the software defect or refund of the purchase price the sole remedy available for any warranty claim based on a defect in the software.") (citing *Crow-Billingsley Stover Creek, Ltd. v. SLC*

---

[30] *Id.* at 62.
[31] *Id.* at 14-15, 244.
[32] R. Docs. 42 at 11; 37-1 at 243.

*McKinney Partners, L.P.*, 2011 WL 3278520, at *7 (Tex. App. Aug. 2, 2011)), *aff'd*, 954 F.3d 804 (5th Cir. 2020). Additionally, to the extent Cantium seeks consequential damages, including spread costs, in connection with the loss of the Kings Hill well, those damages are clearly waived. As explained above, section 15.6 provides the "sole and exclusive remedy" for lost wells, and section 15.16's gross negligence exception does not apply to or limit section 15.6 any more than it does section 15.21.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Ensco's motion for partial summary judgment (R. Doc. 37) is GRANTED.[33]

IT IS FURTHER ORDERED that Cantium's counterclaims are dismissed with prejudice.

New Orleans, Louisiana, this 25th day of July, 2024.

 

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[33] Ensco states in its separately-filed motion to dismiss that if the Court grants its motion for partial summary judgment, the motion to dismiss "would be moot." R. Doc. 41-1 at 5 n.2. Thus, because the Court grants Ensco's motion for partial summary judgment, it need not decide the motion to dismiss. Accordingly, IT IS ORDERED that Ensco's motion to dismiss (R. Doc. 41) is DENIED AS MOOT.