UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENSCO OFFSHORE LLC | CIVIL ACTION |
| VERSUS | NO. 24-371 |
| CANTIUM, LLC | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by plaintiff Ensco Offshore LLC ("Ensco").[1] Defendant Cantium, LLC ("Cantium") responds in opposition,[2] and Ensco replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion as to Ensco's indemnification claim and denying it as to Ensco's breach-of-contract and equitable claims.

**I.    BACKGROUND**

This case involves a contractual dispute. Ensco, a drilling contractor, provides equipment, personnel, supplies, and services for offshore drilling operations.[4] Cantium owns and operates offshore oil-and-gas platforms.[5] The parties entered into a master services contract ("MSC") and one or more service orders.[6] Ensco filed suit against Cantium, alleging that Cantium failed to pay nearly $9 million invoiced for services performed under the MSC and service order, and asserting claims for breach of contract, quantum meruit, and promissory estoppel.[7] Cantium filed an answer and counterclaim alleging that Ensco breached the MSC by failing to provide adequate equipment,

---

[1] R. Doc. 55.
[2] R. Doc. 64.
[3] R. Doc. 67.
[4] R. Docs. 1 at 2; 35 at 2.
[5] R. Doc. 14 at 13.
[6] R. Docs. 1 at 2; 14 at 13; 35 at 2; 40 at 3-4, 10-11.
[7] R. Doc. 1.

failing to deliver and maintain Ensco's rig in working order, failing to provide qualified personnel, failing to provide competent management and proper financial support, and failing to perform drilling operations in a workmanlike manner.[8] Cantium's counterclaim sought over $28 million in damages for losses allegedly caused by Ensco's various failures to perform.[9] Ensco moved for partial summary judgment on Cantium's counterclaim, arguing that, under the terms of the MSC, Cantium was not entitled to the damages it sought.[10] On July 25, 2024, the Court granted Ensco's motion for partial summary judgment and dismissed Cantium's counterclaim with prejudice.[11] Ensco subsequently amended its complaint to include an indemnification claim under section 15.22 of the MSC for litigation expenses Ensco incurred in defending against Cantium's counterclaim.[12] Ensco now urges that it is entitled to summary judgment on all of its claims.

**II.   PENDING MOTION**

Ensco first argues that it should prevail on its breach-of-contract claim because the MSC and service order are both "valid and binding contracts," and Cantium's "[n]on-payment of invoices issued pursuant to a contract constitutes a breach," which resulted in approximately $9 million in damages to Ensco.[13] In the alternative, Ensco argues that it is entitled to judgment on its quantum meruit claim because Ensco provided valuable services and materials to Cantium, who accepted those services and materials with reasonable notice that Ensco expected compensation, but failed to pay.[14] Ensco also argues that it should prevail on its alternative claim for promissory estoppel because Cantium represented in the MSC and service order that it would pay for Ensco's

---

[8] R. Doc. 14.
[9] *Id.* at 26.
[10] R. Doc. 37.
[11] R. Doc. 49.
[12] R. Doc. 35.
[13] R. Doc. 55-1 at 10.
[14] *Id.* at 12.

2

services, and Ensco foreseeably relied, to its detriment, on Cantium's representation.[15] Ensco then contends that it is entitled to summary judgment on its indemnification claim for attorney's fees and costs incurred in defending against Cantium's counterclaim because it sought "the categories of damages [Cantium had contractually waived and] that trigger Cantium's obligation to indemnify Ensco" under section 15.22.[16] Finally, Ensco argues that Cantium's asserted affirmative defenses lack sufficient evidence.[17]

In opposition, Cantium first argues that the motion is premature because Ensco has not yet had the opportunity to conduct adequate discovery.[18] Next, Cantium argues that Ensco is not entitled to summary judgment on its breach-of-contract claim because there are genuine issues of material fact as to whether Ensco's performance "fell below the industry standard and violated the express terms of the [MSC]," excusing Cantium from making further payments.[19] Cantium also disputes certain amounts of Ensco's alleged damages.[20] Cantium then argues that, because "the claims for which Ensco seeks indemnification and attorneys' fees arise[] out of the gross [negligent] conduct of its senior supervisory personnel," section 15.16's gross negligence exception applies to foreclose Ensco's claim for indemnification under section 15.22.[21] Finally, Cantium argues that Ensco's quantum meruit and promissory estoppel claims are barred as a matter of law because they seek recovery for matters falling squarely within the scope of a valid, enforceable, and binding contract (the MSC and service order).[22]

---

[15] *Id.* at 12-13.
[16] *Id.* at 14.
[17] *Id.* at 15.
[18] R. Doc. 64 at 16-17.
[19] *Id.* at 17-19 (quotation at 18).
[20] *Id.* at 19.
[21] *Id.* at 19-22 (quotation at 22).
[22] *Id.* at 22-24.

In reply, Ensco contends that "[t]he bottom line in this case is that Ensco performed services under its contract, properly invoiced Cantium for those services, but Cantium refused to pay Ensco."[23] Ensco argues that, even had Ensco breached the MSC and service order (which it denies), Cantium would still not be excused from its obligation to pay, because Cantium declined to terminate the contract.[24] Ensco further argues that the alleged breaches were immaterial because "Cantium substantially received the benefit of its bargain."[25] Ensco also contends that none of Cantium's disputes of the invoice amounts raises a fact issue.[26] Ensco next argues that Cantium is not entitled to additional discovery because it failed to provide an affidavit or declaration supporting its need for further discovery as required by Rule 56(d) of the Federal Rules of Civil Procedure.[27] Ensco then argues that section 15.16's gross negligence exception "has no bearing" on Ensco's indemnification claim because it seeks the fees and costs Ensco incurred in defending against Cantium's counterclaim, not losses caused by Ensco's own negligence or willful misconduct.[28] Next, Ensco maintains that it is entitled to relief on its equitable claims despite the existence of a valid contract because it made these claims in the alternative to its breach-of-contract claim, and because "courts have applied an exception" to the general rule barring recovery in quantum meruit when an express contract exists to prevent unjust enrichment.[29] Finally, Ensco reiterates that Cantium has not provided sufficient evidence to raise a fact question as to its affirmative defenses.[30]

---

[23] R. Doc. 67 at 1 (emphasis omitted).
[24] *Id.* at 2-3.
[25] *Id.* at 3.
[26] *Id.* at 4-6.
[27] *Id.* at 6-7.
[28] *Id.* at 7-8.
[29] *Id.* at 8-10.
[30] *Id.* at 10.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

    **1. Cantium is not entitled to additional discovery.**

Cantium argues that Ensco's motion is premature because Cantium has not had the opportunity to conduct adequate discovery. But Cantium has not requested relief under Rule 56(d)

of the Federal Rules of Civil Procedure, which permits a party opposing a motion for summary judgment to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Cantium has filed no affidavit or declaration. Because Cantium has not complied with Rule 56(d), it is not entitled to further discovery before the Court decides the motion for summary judgment.

### 2. Ensco is not entitled to summary judgment on its quantum meruit claim.

Under Texas law,[31] "[q]uantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). To recover in quantum meruit, a plaintiff must prove that "it provided valuable services or materials to the [d]efendant sought to be charged for them; that they were rendered under circumstances that reasonably notified the [d]efendant that the [p]laintiff expected payment; and that the [d]efendant accepted, used and enjoyed them without paying for them." *Malin Int'l,* 2014 WL 12616099, at *2. "A party generally cannot recover under a quantum-meruit theory where there is a valid contract covering the services or materials furnished." *Hill*, 544 S.W.3d at 737; *see also Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976) ("If a valid express contract covering the subject matter exists there can be no recovery upon a contract implied by law."), *overruled on other grounds by Sterner v.*

---

[31] The MSC is governed by general maritime law "for matters governed by this law and for all other matters, this Contract is governed by and interpreted under the laws of the State of Texas." R. Doc. 1-1 at 68. It appears there is no general maritime law as to quantum meruit. *See Martin Energy Servs., LLC v. M/V Bravante IX*, 733 F. App'x 503, 506 (11th Cir. 2018) (citing *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1298 (11th Cir. 2009)); *Sea Byte*, 565 F.3d at 1305 n.8 ("Based upon our review of the case law, we do not believe federal admiralty law provides a rule on this [*i.e.*, the availability of quantum meruit damages] – thus, we will look to Florida law."); *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 2014 WL 12616099, at *2 (S.D. Tex. Nov. 24, 2014) (applying Texas law to a quantum meruit claim in a maritime case), *aff'd* 817 F.3d 241 (5th Cir. 2016). Without conducting any choice-of-law analysis, the parties appear to rely on Texas law for the most part, probably given the MSC's alternative designation of Texas law. Thus, the Court will apply Texas law.

*Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989).  It is uncontested that the MSC and service order constitute a valid express contract and that the services and materials Ensco provided Cantium are covered by this contract.[32]  Thus, Ensco "must look to the contract[] for compensation." *Black Lake*, 538 S.W.2d at 86, *quoted in Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 443 (5th Cir. 2024).   And, indeed, it has done so by bringing a claim for breach of contract.

Ensco argues in its reply that "courts have applied an exception" permitting recovery in quantum meruit despite the existence of a valid contract "where the other party accepted and retained some benefit as a result of a contractor's performance," as Ensco claims Cantium did here.[33]  It is true that "Texas recognizes an exception to this general rule in the construction context." *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 436 (5th Cir. 2020) (holding, however, that the exception did "not fit this case" where the work was within the scope of the contract).  Assuming *arguendo* that this exception did apply to the MSC, there would still be an issue of material fact as to the amount Ensco may recover.  Recovery in quantum meruit is not based on the contract price, but on the reasonable "value of [the plaintiff's] services."  *Id.* (citing *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995)).  Therefore, even if this exception applies, Ensco is not entitled to summary judgment on its quantum meruit claim.

**3. Ensco is not entitled to summary judgment on its promissory estoppel claim.**

Promissory estoppel is an equitable remedy that "operates to enforce an otherwise unenforceable promise." *Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 449 (Tex. App. 2002) (observing that promissory estoppel "'cannot replace an enforceable contract'" (quoting *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 754 (Tex. App. 1998))).  To prevail on

---

[32] *See* R. Docs. 55 at 6; 64 at 2.
[33] R. Doc. 67 at 9.

a promissory estoppel claim under Texas law,[34] a plaintiff must show "'(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Like quantum meruit, promissory estoppel is available "only in the *absence* of a valid and enforceable contract." *Drs. Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App. 2004) (emphasis in original) (collecting cases), *cited in Williams v. Colonial Bank, N.A.,* 199 F. App'x 399, 403 (5th Cir. 2006) (upholding dismissal of promissory estoppel claim given "[t]he existence of a valid, express contract that covers the subject matter of the parties' dispute"). Ensco has not claimed that any exception to this general rule applies here. Therefore, Ensco is not entitled to summary judgment on its promissory estoppel claim either.

### 4. Ensco is not entitled to summary judgment on its breach-of-contract claim.

#### a. Ensco's performance

The elements of a breach-of-contract claim under federal maritime law are (1) a contract between the parties; (2) a breach of that contract; and (3) damages. *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016) (citing 17A AM. JUR. 2d *Contracts* § 702 (2016)). "Prior material breach is a defense to a suit for breach of contract." *Lytal Enters., Inc. v. Newfield Expl. Co*., 2007 WL 1239130, at *7 (E.D. La. Apr. 27, 2007) (citing *Motiva Enters., L.L.C. v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th

---

[34] It appears there is no general maritime law on the cause of action of promissory estoppel either. *See RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc*., 429 F. Supp. 3d 246, 259 (E.D. La. 2019) (applying Louisiana law to detrimental reliance claim); *Norfolk Shipbuilding & Dry Dock Corp. v. Seabulk Transmarine P'ship, Ltd.*, 1993 WL 432335, at *3 (E.D. La. Oct. 13, 1993) (applying New York law to promissory estoppel claim); *Regions Equip. Fin. Corp. v. AT 2400,* 2010 WL 11531292, at *8 (E.D. Tex. Sept. 2, 2010) (applying Alabama law to promissory estoppel claim), *aff'd,* 640 F.3d 124 (5th Cir. 2011). And, again, without conducting a choice-of-law analysis, the parties cite to Texas cases, presumably given the MSC's alternative designation of Texas law as the governing law. The Court will therefore also apply Texas law here.

Cir. 2006)). Cantium argues that its nonpayment of the invoices was not a breach because its obligation to pay was excused by Ensco's prior material breaches of the MSC and service order.[35] But Ensco asserts that Cantium has no right to withhold payment because it allowed Ensco to continue performance despite Ensco's alleged breaches.[36] "This is significant," says Ensco, "because the [MSC] includes a specific termination provision, which Cantium did not invoke."[37] The termination provision, found in section 3.2 of the MSC, states that Cantium "may" terminate the MSC and service order if Ensco "materially breaches any of its obligations" or "fails to perform the [s]ervices as required" under the MSC and service order.[38] But section 3.2 does not restrict Cantium's recourse for breach solely to termination. In fact, section 11.2.2 specifically provides that Cantium "may withhold payment for all or such portion of any invoice … about which there is a bona fide dispute but shall pay all other amounts as prescribed."[39] Thus, Cantium's decision not to terminate the contract does not necessarily foreclose its right to withhold payment in response to Ensco's alleged breaches under the MSC, as Ensco contends.

There are genuine issues of material fact regarding whether Ensco materially breached the MSC and service order. Ensco claims that it "performed its obligations under the contracts by furnishing equipment, personnel, and services to Cantium."[40] But Cantium has presented sufficient evidence to raise an issue of fact as to whether Ensco breached its contractual obligations to provide services in a workmanlike manner, maintain its equipment in good working order, and provide trained personnel. For example, Cantium specifically avers, based in part upon the declaration of its drilling manager,[41] that the rig was delivered by Ensco with components that

---

[35] R. Doc. 64 at 17-19.
[36] R. Doc. 67 at 2-3.
[37] *Id.* at 3.
[38] R. Doc. 1-1 at 22-23.
[39] *Id.* at 45.
[40] R. Doc. 55-1 at 7.
[41] R. Doc. 75-6.

10

were "not fit for service,"[42] that several operational and mechanical failures resulted from Ensco's failure to provide, maintain, and timely repair faulty equipment,[43] and that the incompetence of Ensco's crew caused other performance issues.[44] Ensco claims that these alleged breaches are immaterial because "Cantium substantially received the benefit of its bargain [in that] Cantium employed Ensco to drill a well, and Ensco did so."[45] However, the analysis is not that simple, and Cantium has come forward with sufficient summary-judgment evidence to place in dispute the question whether Ensco's performance "fell below the industry standard and violated the express terms of the [MSC]."[46] Therefore, because issues concerning whether Ensco materially breached the MSC and service order are genuinely in dispute, Ensco is not entitled to summary judgment on its breach-of-contract claim.

b. **Calculation of damages**

There are also genuine issues of fact regarding the calculation of the damages claimed by Ensco. Cantium, again relying on the declaration of its drilling manager,[47] disputes several amounts, including a 15% handling fee, credits allegedly owed to Cantium, reimbursement allegedly owed to Cantium for emergency medical evacuation of Ensco's personnel, and miscalculation of downtimes and contract rates.[48] In response, Ensco points to several credit memos and invoices, asserting that these amounts were either already credited to Cantium, agreed upon by the parties, properly charged to Cantium under the service order, or not billed to Ensco directly.[49] The resolution of these issues is for the factfinder, not the Court at this juncture. Hence,

---

[42] R. Doc. 64 at 5.
[43] *Id.* at 5-8, 10-13.
[44] *Id.* at 8-10.
[45] R. Doc. 67 at 3.
[46] R. Doc. 64 at 18.
[47] R. Doc. 75-6.
[48] R. Doc. 64 at 19.
[49] R. Doc. 67 at 4-6.

11

given these disputed issues of material fact regarding the damages sought, Ensco is not entitled to summary judgment on its breach-of-contract claim on this additional ground.

### 5. Ensco is entitled to summary judgment on its indemnification claim.

"Maritime disputes generally are governed by the 'American Rule,' pursuant to which each party bears its own [attorney's fees and] costs," unless a controlling statute or contractual provision allows for such recovery. *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003). "The Fifth Circuit has frequently found that when indemnity provisions apply, they include costs and attorney's fees." *Cantium, LLC v. FDF Energy Servs., LLC*, 2024 WL 3551126, at *7 (E.D. La. June 7, 2024) (citing *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103 (5th Cir. 1979)). "Under federal maritime law, 'a contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties.'" *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (alteration omitted) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

Ensco asserts a contractual right to attorney's fees and costs under section 15.22 of the MSC. This section states in pertinent part:

> 15.22 OPERATOR [Cantium] SHALL INDEMNIFY CONTRACTOR GROUP [Ensco] … FROM AND AGAINST ALL CLAIMS OR CAUSES OF ACTION LISTED IN SECTIONS 15.21(A) AND 15.21(B) WHICH ARE SUFFERED BY THE RELEVANT INDEMNIFYING PARTY OR ITS GROUP [in this instance, Cantium] ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT.[50]

Sections 15.21(A) and 15.21(B) state:

> 15.21 LIMITATION ON CLASSES OF DAMAGES. OPERATOR [Cantium] AND CONTRACTOR [Ensco] MUTUALLY WAIVE AND RELEASE, ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE GROUP, ALL OF THE FOLLOWING CLAIMS FOR DAMAGES ARISING OUT OF THIS CONTRACT, WHETHER SUCH CLAIMS ARE MADE IN CONNECTION WITH AN INDEMNITY SPECIFIED IN THIS SECTION

---

[50] R. Doc. 1-1 at 59.

12

15, A BREACH OF ANY OBLIGATION UNDER THIS CONTRACT OR ANY OTHER CLAIM:

(A) CONSEQUENTIAL LOSS UNDER APPLICABLE LAW (WHETHER DIRECT OR INDIRECT) AND ALL OF THE FOLLOWING (WHETHER OR NOT CONSIDERED CONSEQUENTIAL LOSS UNDER APPLICABLE LAW):

  (1) LOST PROFITS.

  (2) LOSS OF PRODUCTION, INCLUDING PRODUCTION OF PETROLEUM OR PETROLEUM PRODUCTS.

  (3) LOSS OF PROSPECTIVE ECONOMIC ADVANTAGE OR BENEFIT.

  (4) LOSS OF BUSINESS OPPORTUNITY.

  (5) COSTS OF PERSONS HIRED BY EITHER PARTY TO PROVIDE VESSELS, MATERIALS, AND SERVICES OR WORK IN SUPPORT OF THE SERVICES, INCLUDING THOSE COSTS THAT ARE SOMETIMES REFERRED TO AS "SPREAD COSTS", BUT NOT INCLUDING INCREMENTAL COSTS INCURRED BY OPERATOR [Cantium] FOR THE BENEFIT OF CONTRACTOR [Ensco] AND AT CONTRACTOR'S [Ensco's] REQUEST, SUCH AS FUEL OR OTHER LOGISTICAL SUPPORT THAT OPERATOR [Cantium] IS NOT EXPLICITLY REQUIRED TO PROVIDE UNDER THIS CONTRACT.

(B) PUNITIVE OR EXEMPLARY DAMAGES.

Cantium's counterclaim sought "damages incurred as a result of Ensco's breaches of the [MSC], including, but not limited to, damages incurred as a result of extended day rate charges, extended periods of non-productive time, loss of the Kings Hill well and associated redrill expenses, and all other amounts to be proven at trial but totaling no less than $28.5 Million."[51] The claimed damages expressly included "spread costs."[52] Because these are the types of consequential damages listed in section 15.21(A), and consequently waived by the parties, the Court granted Ensco's previous

---

[51] R. Doc. 14 at 26.
[52] R. Doc. 37-1 at 243-46.

motion for partial summary judgment and dismissed Cantium's counterclaim.[53] Ensco now argues that Cantium's counterclaim "triggers Cantium's indemnity obligations to Ensco under 15.22."[54]

Ensco does not explain how section 15.22 works, except to pronounce that "Cantium 'shall indemnify' Ensco 'from and against all claims or causes of action listed in [s]ection[] 15.21(A).'"[55] The Court's reading of the MSC is consistent with this conclusion as applied here. Section 15.22 imposes an indemnification obligation for any of the listed claims as may be asserted between Ensco and Cantium, rather than by a third-party. Section 15.22's phrase "claims or causes of action [waived in section 15.21] which are suffered *by* the relevant *indemnifying* party" refers to claims for such damages *asserted by that indemnifying party* – in this instance, Cantium, by means of the counterclaim. The structure of the MSC supports this interpretation. Because section 15.22 is immediately preceded by section 15.21's waiver of certain claims, section 15.22 is reasonably construed as imposing a contractual penalty on a party who brings one or more of those waived claims, as Cantium did here. As a result, Cantium owes Ensco indemnity for having brought the counterclaim. And because contractual indemnification provisions are read to permit the recovery of litigation expenses, including attorney's fees and costs, Ensco would be entitled under section 15.22 to recover the litigation expenses it incurred to defend against Cantium's counterclaim, failing some other exception.

Cantium urges just such an exception. Thus, while Cantium admits that section 15.22 "provides that Cantium will indemnify Ensco from and against all claims or causes of action seeking, among other things[,] consequential damages and spread costs," it contends that its indemnity obligation "does not extend to claims arising out of gross negligence and/or willful

---

[53] R. Doc. 49.
[54] R. Doc. 67 at 8.
[55] *Id.*

misconduct on the part of Ensco supervisory personnel," pursuant to section 15.16.[56] This section states:

> 15.16 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, OPERATOR [Cantium] SHALL HAVE NO OBLIGATION UNDER THIS AGREEMENT TO DEFEND, PROTECT, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP [Ensco] FOR ANY LOSSES AS A RESULT OF ANY MEMBER OF CONTRACTOR GROUP [Ensco] SENIOR SUPERVISORY PERSONNEL'S GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT ARISING OUT OF THE PERFORMANCE OR NON-PERFORMANCE OF ANY OBLIGATION AND/OR OF SERVICES UNDER THIS CONTRACT OR ANY SERVICE ORDER. THE TERM "SENIOR SUPERVISORY PERSONNEL" SHALL MEAN, FOR THE CONTRACTOR [Ensco], THE OFFSHORE INSTALLATION MANAGER, THE VICE PRESIDENT OF THE APPLICABLE BUSINESS UNIT AND/OR ANY INDIVIDUAL HIGHER IN THE CHAIN OF THE CONTRACTOR'S [Ensco's] FORMAL ORGANIZATIONAL STRUCTURE, INCLUDING THE INDIVIDUALS TO WHOM SUCH REPRESENTATIVES FORMALLY REPORT.[57]

But Ensco is not seeking indemnification for losses suffered by anyone "as a result of" the gross negligence of its own supervisory personnel. Instead, Ensco seeks indemnification for losses it incurred in defending against Cantium's improperly asserted counterclaim for damages it contractually waived. Cantium, though, contends that its counterclaim was predicated on the gross negligence of Ensco's supervisory personnel, so the gross negligence exception to section 15.16 applies to bar Ensco's indemnification claim. This is a bridge too far. Cantium's interpretation would allow a party to bring claims for damages expressly waived by section 15.21 against the other without consequence, so long as the claimed damages are alleged to be "a result of" the defending party's gross negligence or willful misconduct – even though the damages waived by section 15.21 include those arising out of gross negligence or willful misconduct.[58] The Court has

---

[56] R. Doc. 64-34 at 3-4.
[57] R. Doc. 1-1 at 57-58.
[58] R. Doc. 49 at 8.

already rejected this argument and found that there is no gross negligence exception to the waiver of damages set out in section 15.21.[59] Thus, the gross negligence exception in section 15.16 cannot reasonably apply to relieve Cantium of its indemnification obligation under section 15.22. Therefore, Ensco is entitled to summary judgment on its indemnification claim.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Ensco's motion for summary judgment (R. Doc. 55) is GRANTED as to its indemnification claim and DENIED as to its breach-of-contract and equitable claims.

New Orleans, Louisiana, this 20th day of September, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[59] *Id.*